UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ROY FALKOWSKI,

                        Plaintiff,

                 - against -

NORTHFORK HOUSING ALLIANCE,
INC., TANYA PALMORE, in her capacity as
Executive Director, BARRY LATNEY in his
capacity as Hearing Officer,

                        Defendants.
----------------------------------------------------------X

**REPORT AND RECOMMENDATION**

CV 08-2550 (JS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.  PRELIMINARY STATEMENT**

By Order dated October 23, 2008, District Judge Seybert referred this matter to me to report and recommend on "whether a default judgment should enter and for a determination of the appropriate damages, if any" [DE 9].

Plaintiff brings this action following the termination of his benefits under the Section 8 Housing Assistance Payments Program of the United States Housing Act of 1937, as amended by the Housing and Community Development Act of 1974, 42 U.S.C. § 1437f (the "Housing Act"). Plaintiff alleges that Defendants have violated 42 U.S.C. §1983 ("Section 1983"), the Housing Act and its accompanying regulations, and the due process and equal protection clauses of the United States Constitution. Plaintiff seeks the following relief: (1) a judgment declaring that "Defendants have violated 42 U.S.C. § 1983 in failing to accord Plaintiff the procedural rights guaranteed to him by 24 C.F.R. 982.555(e)(2)(i), (5), (6) and the Due Process Clause of the Fourteenth Amendment of the United States Constitution; (2) a judgment declaring that

"Defendants have violated 42 U.S.C. § 1983 by terminating Plaintiff's Section 8 housing assistance eligibility under grounds not permitted by 24 C.F.R. 982.552(b), (c); and (3) an injunction preventing "Defendants from terminating Plaintiff's Section 8 Voucher." *See* Compl., WHEREFORE clause.

For the reasons set forth below, I respectfully recommend to Judge Seybert that Plaintiff's motion for a default judgment be DENIED.

## II. BACKGROUND

### A. Procedural Setting

Plaintiff, represented by Nassau/Suffolk Law Services Committee, Inc., commenced this action on June 26, 2008. Judge Seybert granted Plaintiff's motion to proceed *in forma pauperis* and ordered the United States Marshal Service to serve the Complaint upon Defendants [DE 4]. The Complaint was served on Defendant Barry Latney on August 19, 2008, and on Defendants Tanya Palmore and North Fork Housing Alliance, Inc. on August 21, 2009 [DE 6]. The Process Receipt and Return for Summons & Complaint was filed with the Court on September 8, 2008. All three Defendants failed to answer or otherwise respond to the Complaint. Plaintiff filed a motion for default judgment on October 22, 2008 [DE 7]. The Clerk of the Court's notation of default was entered on October 23, 2008 [DE 8]. This matter was referred to me to by Judge Seybert for a Report and Recommendation to determine whether a default judgment should enter and whether Plaintiff is entitled to the relief requested in his motion [DE 9].

### B. Factual Background

A default constitutes an admission of all well-pleaded factual allegations in the Complaint and the allegations as they pertain to liability are deemed true. *Joe Hand Promotions,*

*Inc. v. El Norteno Rest. Corp.*, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Greyhound Exhibitgroup, Inc. v. E.I.U.I. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080 (1993)). A default judgment entered on the well-pleaded allegations in a complaint establishes a defendant's liability. *See Garden City Boxing Club, Inc. v. Morales*, 2005 WL 2476264, at *3 (E.D.N.Y. Oct. 7, 2005) (citing *Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995)).

The Complaint in this matter contains the following factual allegations. Defendant North Fork Housing Alliance, Inc. (the "Housing Authority") is a "not-for-profit corporation established by the Town of Southold to assist low income residents in acquiring decent, safe affordable housing." Compl. ¶ 7. It is the local administrator in this particular area of Suffolk County for the "Department of Housing and Urban Development's [HUD] Housing Choice Voucher Rental Assistance Program" ("Section 8 program").[1] *Id.* Defendants Latney and Palmore are the Board President and Executive Director, respectively, of the Housing Authority. Plaintiff occupies a one-bedroom house in Southold, New York under the Section 8 program, as administered by the Housing Authority. *Id.* ¶ 10. Plaintiff's sole source of income is his monthly Social Security disability payments. As a participant in the Section 8 program, Plaintiff does not pay any money towards his rent – the monthly contractual rental balance is paid by the Housing Authority. *Id.* ¶ 15.

---

[1] Section 8 of the Housing Act of 1937, as amended, authorizes the Secretary of HUD to "enter into contracts with state and local public housing agencies ('PHAs') to provide financial assistance to low-income individuals or families renting housing on the private rental market." *Augusta v. Cmty Dev. Corp. of Long Island, Inc.*, No. 07-CV-0361, 2008 WL 5378386, at *1 (E.D.N.Y. Dec. 23, 2008). State and Local PHAs are responsible for the administration of the program. The North Fork Housing Alliance, Inc. is one of these PHAs and is referred to as an "administrative agency" throughout this Report and Recommendation.

On April 9, 2008 Defendant Palmore sent Plaintiff a notice terminating his Section 8 voucher. The notice, attached to the Complaint as Exhibit B, listed four reasons for the termination: (1) an unauthorized individual, Peter Foster, resided in the unit; (2) Foster paid Plaintiff $150 per week since December 2007, which income Plaintiff had failed to report; (3) Plaintiff had collected this money as rent from Foster while receiving Section 8 rental assistance; and (4) Foster is a known sex offender.

Upon Plaintiff's timely-submitted written request, an informal hearing was held on May 22, 2008 to review the decision to terminate his Section 8 benefits. *Id.* ¶ 20. Defendant Latney acted as the hearing officer. *Id.* Plaintiff, through his counsel, was given an opportunity to present testimony and cross-examine witnesses. Plaintiff denied that Foster had ever lived in his home, although he admitted that Foster had stayed overnight on several occasions. *Id.* ¶ 23. Furthermore, Plaintiff stated that he was unaware that Foster was a felon – Plaintiff believed that Foster had been charged only with a misdemeanor. Plaintiff also produced a written statement from Foster, which was signed and notarized, stating that Foster never lived at Plaintiff's address. *Id.* ¶ 26. Finally, Plaintiff testified that after Foster left Plaintiff's home, Plaintiff learned that Foster was living in a tent behind his employer's building. Plaintiff submitted digital photographs of this tent. *Id.* ¶ 26 & Ex. F.

Subsequently, Defendant Housing Authority presented evidence against Plaintiff. First, it submitted "a two-page printout from the internet web site of the N.Y.S. Department of Criminal Justice Services showing 'Current Reported Offender Details' of one Peter Foster.'" *Id.* ¶ 24 & Ex. D. Next, Defendant Housing Authority called Detective Sergeant John Sinning as a witness. Plaintiff's counsel objected to this witness on the grounds that Plaintiff had previously been told

4

that no witnesses would be called. *Id.* ¶ 25. In response, Defendant Palmore stated that she had "gone to the Southold Police Department intending to obtain a police report to present as evidence at the hearing and instead secured Detective Sinning's presence for testimony at the hearing." *Id.* Plaintiff's objection was overruled and Sinning was permitted to testify. Sinning corroborated that Foster was a registered sex offender and stated that Foster had registered using Plaintiff's home address. Sinning testified that when he visited the address, Plaintiff answered the door and told Sinning that Foster was at work "and would be 'home' later." *Id.* Plaintiff stated that he had, in fact, told Sinning that Foster "was at work and would be 'here' afterwards." *Id.* Finally, Sinning affirmed Plaintiff's testimony that Foster appeared to be currently living in a tent behind his place of employment. *Id.* ¶ 26.

According to the Complaint, Vice-President of the Board of Defendant Housing Authority, Paul Davis,[2] who attended the informal hearing, stated that a water bill "showing a difference in usage for the period of Foster's alleged residence in Plaintiff's household would be indicative of whether or not there was another person residing there." *Id.* ¶ 27. Plaintiff asserted that he was sure he was the only one residing in the one-bedroom house and believed that the water and other utility bills would demonstrate that fact. However, Plaintiff states that he was not permitted to submit those bills. *Id.*

According to Plaintiff, Defendant Latney, who presided as the hearing officer, never rendered a written decision. *Id.* ¶ 28. Instead, Plaintiff received a May 23, 2008 letter signed by Defendant Palmore. *Id.* ¶ 28 & Ex. G. The letter stated that, as a "follow-up to the hearing held on May 22, 2008," Plaintiff was being advised of the following information:

---

[2] Davis is not named as a defendant in this action.

> Our office has taken everything discussed at the hearing under advisement and we have discussed this matter with our H.U.D. representative in order to determine the basis of our decision.
>
> Therefore, be advised that based on the evidence presented at the hearing and the print-out from the N.Y.S. Department of Criminal Justice Services (DCJS) via the internet, this website showed Peter F. Foster updated his address as of 04/07/08.
>
> This information documents Mr. Foster as residing at Mr. Falkowski[']s residen[ce] at 650 Bayview Avenue, Southold, N.Y., therefore, we are terminating your Section 8 rental assistance effective 07/01/08.
>
> This determination was made because you are in violation of the program rules and regulations as stipulated in our Administrative Plan: unauthorized person, unreported income, and sex offender in your assisted housing.

*Id*. ¶ 28 & Ex. G. Copies of the letter were sent to Defendant Latney as well as to Victor Oluwole, H.U.D. Senior Revitalization Specialist, with whom the Housing Authority had consulted regarding the decision to terminate. *Id.* On June 11, 2008, Defendant Palmore issued a final written notice of termination of benefits. *Id.* ¶ 29 & Ex. H.

On June 23, 2008, Plaintiff's attorney notified Defendant Housing Authority that it would file a request for temporary restraining order and preliminary injunction. According to Plaintiff, "[a]fter receipt of the papers, defendants stated that they would not oppose such a request and in fact would stay termination of Mr. Falkowski's Section 8 voucher until the Court rendered final judgment upon the complaint." Aff'n of Hannah Abrams in Supp. of Decl. Judgment & Inj. Relief ("Abrams Aff'n") at ¶ 10.

### III. DEFAULT JUDGMENT

For a movant to obtain a default judgment, it must complete a two-step process. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Fed. R.. Civ. P. 55(a); *see FashionTV.com GMBH v. Hew*, 2007 WL 2363694, at *2 (S.D.N.Y. Aug. 17, 2007). Once the clerk's certificate of default is issued, the moving party may then make application for entry of a default judgment, pursuant to Fed. R. Civ. P. 55(b), as Plaintiff has done here. *See Kieit Constructors, Inc. v. Franbuilt, Inc.,* 2007 WL 4405029 at *2 (W.D.N.Y. Dec. 14, 2007); *FashionTV.com GMBH*, 2007 WL 2363694 at *2. Therefore, the first step has been satisfied since the Clerk of the Court issued a certificate of all three Defendants' defaults [DE 8].

For a movant to obtain a default judgment, it must complete a two-step process. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Fed. R.. Civ. P. 55(a); *see FashionTV.com GMBH v. Hew*, 2007 WL 2363694, at *2 (S.D.N.Y. Aug. 17, 2007). Once the clerk's certificate of default is issued, the moving party may then make an application for entry of a default judgment, pursuant to Fed. R. Civ. P. 55(b), as Plaintiffs have done here. *See Kieit Constructors, Inc. v. Franbuilt, Inc.,* 2007 WL 4405029 at *2 (W.D.N.Y. Dec. 14, 2007); *FashionTV.com*, 2007 WL 2363694, at *2. The Clerk of the Court noted the default of Defendants Northfork Housing Alliance, Inc., Tanya Palmore and Barry Latney. CBOD, Greenbaum, and Ralston but judgment has not been entered for Plaintiffs. *See* DE 8.

Rule 55(b)(2) provides that, except in cases in which "the plaintiff's claim is for a sum certain or a sum that can be made certain by computation" (*see* Rule 55(b)(1)), "the party must apply to the court for a default judgment." The determination of a motion for default judgment is left to the sound discretion of the district court. *See Shah v. New York State Dep't of Civil Serv.*, 168 F.3d 160, 610, 615 (2d Cir. 1999).

In determining whether to grant a default judgment, the court may consider "numerous factors, including 'whether plaintiff has been substantially prejudiced by the delay involved [ ] and whether the grounds for default are clearly established or in doubt.'" *O'Callahan v. Sifre*, 242 F.R.D. 69, 73 (S.D.N.Y. 2007) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2685 (3d ed.1998)). As the Second Circuit has observed, the Court is guided by the same factors which apply to a motion to set aside entry of a default. *See Enron Oil Corp. v. Diakuhara*, 90, 96 (2d Cir. 1993); *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170-171 (2d Cir. 2001). These factors are (1) "whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.,* 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003) (citation omitted); *see also Basile v. Wiggs*, 2009 WL 1561769, at *4 (S.D.N.Y. May 29, 2009) (listing factors for court's consideration including defaulting party's bad faith, "possibility of prejudice to the plaintiff, the merits of the plaintiff['s] substantive claim, the sufficiency of the complaint, the sum at stake, [and] whether the default was due to excusable neglect") (second alteration in the original) (quoting *Feely v. Whitman Corp.*, 65 F. Supp. 2d 164, 171 (S.D.N.Y. 1999)).

8

### A. Willfulness

As to the first factor, Defendants' failure to respond to the Complaint sufficiently demonstrates willfulness. *See, e.g., Indymac Bank v. Nat. Settlement Agency, Inc.*, 2007 WL 4468652 (S.D.N.Y. Dec. 20, 2007). It is undisputed here that the Complaint was properly served and that Defendants have failed to respond to the Complaint after being so served.

### B. Meritorious Defense

Next, as to the issue of a meritorious defense, the Court is unable to make a determination whether the Defendants have such a defense to Plaintiff's allegations because Defendants have presented no such defense to the Court. Hence, where no defense has been presented and, "[w]here, as here, 'the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *Chen v. Jenna Lane, Inc.,* 30 F. Supp. 2d 622, 623 (S.D.N.Y.1998) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2688, at 58-59 (3d ed.1998)). Here, Plaintiff does not seek money damages – rather, he seeks injunctive and declaratory relief. The issue for the Court, therefore, is whether the Complaint, the allegations of which are deemed admitted by Defendants in light of their default, successfully and sufficiently avers that Defendants have violated Plaintiff's constitutional and statutory rights in connection with the termination of Plaintiff's Section 8 benefits.

Plaintiff asserts claims under Section 1983. However, it is axiomatic that Section 1983 "does not create a substantive right." *Lawrence v. Town of Brookhaven Dep't of Hous., Cmty. Dev. & Intergovernmental Affairs*, 2007 WL 4591845, at *14 (E.D.N.Y. Dec. 26, 2007). Rather, "to recover, a Plaintiff must establish the deprivation of a separate, federal right." *Id.* Here, the

Complaint contains allegations that Defendants violated Plaintiff's constitutional due process rights. *See id.*

### 1. *Plaintiff's Contentions in Support of His Due Process Claims*

As a recipient of Section 8 rental subsidies, Plaintiff has a "protected property interest in continuing to receive such assistance." *Id.*; *see also Augusta v. Cmty Dev. Corp. of Long Island, Inc.*, No. 07-CV-0361, 2008 WL 5378386, at *5 (E.D.N.Y. Dec. 23, 2008). Accordingly, before such a protected property interest may be terminated, due process requires the following: "(1) timely and adequate notice, including the reasons for the proposed termination, (2) an opportunity to be heard at a pre-termination hearing, including the right to present evidence and confront and cross-examine witnesses, (3) a right to be represented by counsel at the hearing, (4) a written decision, including the reasons for the determination and the evidence on which the decision maker relied, and (5) an impartial decision maker." *Lawrence*, 2007 WL 4591845 at *15 (citing *Goldberg v. Kelly*, 397 U.S. 254, 266-71 (1970)).

The regulations accompanying the Housing Act (the "Regulations") provide that certain procedural guidelines must be followed before an individual's Section 8 benefits may be terminated. *Lawrence*, 2007 WL 4591845 at *15. These regulatory procedures mirror the due process requirements set forth by the Supreme Court in *Goldberg v. Kelly*. *See* 24 CFR § 982.555.

It does not appear that Plaintiff has raised any issue with respect to the first or third so-called "*Goldberg* factors."[3] As to the second *Goldberg* factor (*i.e.*, opportunity to be heard at

---

[3] Indeed, Plaintiff alleges that he received notice that his Section 8 benefits were going to be terminated and that the notice advised him of his right to request an informal hearing, which he did. Moreover, Plaintiff was represented by counsel during the hearing.

pre-termination hearing, including the right to present evidence and to confront and cross-examine witnesses), Plaintiff raises four issues: (1) Plaintiff had no opportunity to examine the police report that Defendant Palmore attempted to obtain from the Southold Police Department; (2) Plaintiff was not given any advance notice that Detective Sergeant Sinning would testify at the hearing; (3) Sinning's testimony was based upon hearsay statements, specifically statements attributed to Peter Foster; and (4) Plaintiff did not have an opportunity to cross-examine HUD Specialist Victor Oluwole.[4]

As to the fourth and fifth *Goldberg* factors, Plaintiff claims that his due process rights were violated because he never received a written decision from Defendant Latney, the individual who conducted the hearing, but instead received a letter from Defendant Palmore, the individual who made the initial decision to terminate his Section 8 benefits.

### 2. *Allegations Against Defendants Palmore and Latney in their Official Capacities*

Section 1983 provides, in pertinent part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected,

---

[4] As to Plaintiff's contention that he did not have an opportunity to cross-examine HUD Specialist Victor Oluwole, the Regulations provide that during the informal hearing "[t]he [public housing agency ("PHA")] and the family must be given the opportunity to present evidence, and may question any witnesses." 24 CFR § 982.555(e)(5). No evidence has been presented that Victor Oluwole was present at the informal hearing. Moreover, the May 23, 2008 letter notifying Plaintiff that his Section 8 benefits were terminated stated that Defendant Housing Authority "has discussed this matter with our H.U.D. representative in order to determine the basis of our decision." Compl. ¶ 28 & Ex. G. The name of the HUD representative was not disclosed in the body of the letter. Because Victor Oluwole, whose title is "H.U.D. Senior Revitalization Specialist" is copied on the letter, Plaintiff appears to assume the Oluwole is the HUD representative referred to in the May 23, 2008 letter. Plaintiff may be correct, but there is no evidence confirming that inference.

> any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

42 U.S.C. § 1983. The Supreme Court has explained the difference between personal-capacity suits and official-capacity suits brought pursuant to Section 1983. Personal-capacity suits "seek to impose personal liability upon a government official for actions he takes under color of state law," while official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. N.Y. City Dep't of Soc. Services*, 436 U.S. 658, 690 n.55 (1978) (internal quotation marks omitted)). In order to state a claim for personal liability under Section 1983, the plaintiff must allege "that the official, acting under color of state law, caused the deprivation of a federal right." *Id.* at 166; *see also Green v. Maraio*, 722 F.2d 1013, 1016 (2d Cir. 1983). More is required, however, in an official-capacity action "because a governmental entity may be held liable under Section 1983 only when found to be a 'moving force' behind a constitutional deprivation; that is, the entity's 'policy or custom' must have played a part in the violation of federal law." *Davis v. County of Nassau*, 355 F. Supp. 2d 668, 675 (E.D.N.Y. 2005) (quoting *Graham*, 473 U.S. at 166).

The Supreme Court has recognized that "in many cases, the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both." *Graham*, 473 U.S. at 167 n.14; *see also Rao v. N.Y. City Health & Hospitals Corp.*, 882 F. Supp. 321, 330 (2d Cir. 1995). Here, the Complaint specifically names Tanya Palmore "in her capacity as Executive Director," and Barry Latney "in his capacity as Hearing Officer." Moreover, the Complaint does not seek any money damages (including punitive damages), but seeks only

declaratory and injunctive relief. *See* Compl., WHEREFORE; *see also Graham*, 472 U.S. at 167 n.13 ("In addition, punitive damages are not available under § 1983 from a municipality, but are available in a suit against an official personally.") (internal citations omitted). Based on these circumstances, the Court finds that Plaintiff has sued Defendants Palmore and Latney in their official capacities only.

Plaintiff has failed to successfully allege Section 1983 official-capacity claims against Defendants Palmore and Latney. The Complaint does not allege that any policy or custom of the Defendant Housing Authority (as the relevant municipal entity) "played a part in the violation of federal law." *See Graham*, 473 U.S. at 166. As an initial matter, the Court finds that Plaintiff's allegations with respect to the second *Goldberg* factor do not raise any colorable constitutional claims. Although it may be true that Plaintiff did not have an opportunity to review the police report before the hearing, the Court does not find that this "omission" amounts to a due process violation because, as Plaintiff acknowledges, the report was never actually introduced at the hearing. Pl. Mem. at 11.[5]

The Court further finds that there were no due process violations in connection with Sinning's testimony during the informal hearing. Plaintiff's counsel, Hannah Abrams, Esq., was present at the hearing on May 22, 2008. *See* Compl. ¶ 20. Attorney Abrams raised an objection

---

[5] Plaintiff notes that because Defendants did not provide Plaintiff with a copy of the police report in advance of the hearing, they would not have been permitted to introduce the report during the hearing. *See* Pl. Mem. at 10-11. The Regulations provide that the "family must be given the opportunity to examine before the PHA hearing any PHA documents that are directly relevant to the hearing . . . If the PHA does not make the document available for examination on request of the family, the PHA may not rely on the document at the hearing." 24 CFR § 982.555(e)(2)(i). In light of the fact that the report was never introduced, Plaintiff suffered no harm as a result.

to Sinning's testimony when he was called as a witness during the hearing, and her objection was overruled. Pl. Mem. at 4. Moreover, there is nothing asserted in the Complaint or in any other records in the docket of this case to indicate that Plaintiff's counsel was prevented from refuting the information Detective Sergeant Sinning provided or did not do so. In fact, Plaintiff's counsel acknowledges that "Mr. Falkowski had the opportunity to cross-examine the detective." *Id.* at 11.

As noted above, Sinning's testimony corroborated that Foster was a registered sex offender and had registered at Plaintiff's home address. Sinning further testified that when he visited the address, Plaintiff answered the door and told Sinning that Foster was at work "and would be 'home' later." Compl. ¶ 24. Finally, Sinning corroborated Plaintiff's testimony that Foster appeared to be currently living in a tent behind his place of employment. *Id.* ¶ 26.

Plaintiff admits that he had the opportunity to respond to Sinning's statements and that in doing so, he also produced a notarized statement of Peter Foster that Foster had never lived at Plaintiff's home. He also produced some photographs purportedly showing that Foster was living in a tent behind the place where he worked. Pl. Mem. at 4. Even if Sinning's testimony as to Foster's statements constituted hearsay, the use of hearsay is generally permissible in these types of informal hearings. *See* 24 CFR §982.555(e)(5) ("Evidence may be considered without regard to admissibility under the rules of evidence applicable to judicial proceedings."). It is undisputed that Plaintiff had the opportunity to challenge the credibility of Sinning's testimony during his cross-examination. Pl. Mem. at 11. Nonetheless, Plaintiff complains that the detective's testimony was relying upon "the self-motivated statements of a criminal [Foster] who has been habitually derelict in his obligation to register with local law enforcement." *Id.*

14

Unfortunately, this argument cuts both ways in light of Plaintiff's reliance upon Foster's notarized statement, which Plaintiff submitted to support his *own* position at the hearing.

Plaintiff's claim that his due process rights were violated because he never received a written decision from Defendant Latney is perhaps the strongest argument involving lack of compliance with the CFR. "[A]n impartial decisionmaker is essential" to the fulfillment of Plaintiff's due process rights. *Goldberg*, 397 U.S. at 271. While "prior involvement in some aspects of a case will not necessarily bar a welfare official from acting as a[n impartial] decision maker," that individual "should not . . . have participated in making the determination under review." *Id.* The Regulations provide that "[t]he person who conducts the hearing must issue a written decision, stating briefly the reasons for the decision . . . A copy of the hearing decision shall be furnished promptly to the family." 24 CFR § 982.555(e)(6).

Here, the allegations in the Complaint, which must be accepted as true for purposes of this motion, set forth that Defendant Latney acted as the hearing officer but never sent Plaintiff "a written decision, including the reasons for the determination and the evidence on which the decision maker relied." *Goldberg*, 397 U.S. at 271. Moreover, the May 23, 2008 letter from Executive Director Palmore to Plaintiff, which was sent "as a follow-up to the hearing held on May 22, 2008" and notified Plaintiff that "we are terminating your Section 8 rental assistance effective 07/01/08" (Compl., Ex. G) does not constitute a written decision of an impartial hearing officer – the role fulfilled by Defendant Latney here.[6] Moreover, because Defendant Palmore

---

[6] The Complaint asserts that Barry Latney is President of the Board of the North Fork Housing Alliance, Inc. and his mailing address is the same as that listed for Defendant Tanya Palmore, the Executive Director, namely, 116 South Street, Greenport, NY 11944. Compl. ¶¶ 8-9. There is no information provided to assess whether the Regulations allow the drafting and conveyance of the termination letter to be delegated from the President of the Board

15

was the individual who signed the original letter notifying Plaintiff that his Section 8 benefits were terminated (Compl., Ex. B), she cannot be considered an impartial decision maker within the meaning of *Goldberg v. Kelly*. *Goldberg*, 397 U.S. at 271; *see also Lawrence*, 2007 WL 4591845 at *18 ("If, in fact, [Defendant] Gallagher sent Plaintiff a decision that was not the decision of the impartial hearing officer, such actions would not comport with requirements of due process."). However, these allegations cannot sustain a Section 1983 claim against Defendants Palmore and Latney in their official capacities in any event because there is no allegation that any policy or custom of the relevant governmental entity (i.e., the Housing Authority) played any role in the violation of federal law.[7] *See Graham*, 473 U.S. at 166.

### 3. Allegations Against Defendant Housing Authority

The Court also finds that the Complaint does not contain sufficient allegations to sustain a Section 1983 claim against Defendant Housing Authority. A municipality or its administrative agency may be liable for "the acts and pronouncements of a single official" when that official is "the 'final policymaker' in the area at issue" such that his actions constitute policy.

---

of the organization who served as the hearing officer in this matter to the Executive Director of the organization. It would appear from the specific language of 24 C.F.R. § 982.555(e)(6) that Defendant Latney is the only one authorized to issue a decision since he was the actual hearing officer.

[7] An order awarding the equitable remedy of injunctive relief "may be directed only at liable individuals in their official capacities or at municipal entities themselves." *Rao*, 882 F. Supp. at 330. This is because a finding of liability against an individual in his official capacity is equivalent to a finding that the municipality is liable. *See id*. Where, as here, individuals are not found liable for constitutional violations in their official capacity, and where, as discussed below, there are no grounds for finding a municipality or its subdivision liable under Section 1983, it is wholly improper to award injunctive relief. Such an award "would be contrary to *Monell* which found that a municipal entity should only be liable when the unconstitutional actions were pursuant to a policy, custom, or practice, which was not the case here." *Id*. at 331 (citing *Monell*, 436 U.S. at 691-95).

*Chin v. N.Y. City Hous. Auth.*, 575 F. Supp. 2d 554, 561 (E.D.N.Y. Sept. 9, 2008). The question of whether an individual possesses "final policymaking authority" is an issue of state law. *Brown v. Baldwin Union Free Sch. Dist.*, 603 F. Supp. 2d 509, 517 (E.D.N.Y. 2009) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). Such authority may be either granted expressly by the legislature or delegated" from those who possessed it through an express legislative grant." *Chin*, 575 F. Supp. 2d at 561. The individual must possess "authority to formulate policy governing the particular conduct at issue." *Id.*

Here, Plaintiff has not alleged that either Defendant Palmore or Latney are "final policymakers" such that their actions would constitute a policy for which Defendant Housing Authority would be liable. The Complaint alleges that Defendant Palmore, as Executive Director of the Housing Authority, was "responsible for the daily oversight and day-to-day administration of the Section 8 program." Compl. ¶ 8. With respect to Defendant Latney, Plaintiff alleges only that he was the "President of the Board of the Housing Authority" and acted as the hearing officer. *Id.* ¶ 9. Plaintiff has not sufficiently alleged that either Defendant Latney or Palmore possessed the "authority to formulate policy governing" the area of Section 8 rental assistance. *See Chin*, 575 F. Supp. 2d at 562.

Moreover, a municipality or its subdivision "may not be held vicariously liable under Section 1983 for the actions of employees below the policymaking level." *Lawrence*, 2007 WL 4591845 at *19; *see also Monell v. Dep't of Soc. Services*, 436 U.S. 658, 691 (1977) (finding that with the passage of Section 1983, "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort"). Therefore, "to state a Section 1983 claim for the actions of employees below the policymaking

17

level, Plaintiff must plead three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Lawrence*, 2007 WL 4591845 at *19 (quoting *Zahra v. Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (internal quotation marks omitted)). The Complaint does not contain any factual allegations that Plaintiff suffered an injury due to an official policy or custom. Accordingly, the Complaint does not successfully allege liability under Section 1983 on the part of Defendant North Fork Housing Alliance, Inc.

### C. Prejudice

The final factor to be considered is whether the non-defaulting party would suffer prejudice as a result of denial of the motion for default. There is no doubt that denying this motion would be prejudicial to Plaintiffs "as there are no additional steps available to secure relief in this Court." *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06 Civ. 14226, 2008 WL 5560868, at * 2 (S.D.N.Y. Oct. 27, 2008) (citing *Mason Tenders Dist. Council v. Duce Constr. Corp.,* 2003 WL 1960584, at * 3). However, that prejudice is overcome by the fact that Plaintiff is not entitled to relief in this Court at all on the Complaint as it currently stands because the pleading does not successfully allege liability of Defendant Housing Authority under Section 1983.

## IV. CONCLUSION

In this action, Plaintiff has sought equitable relief only, in the form of an injunction preventing Defendant Housing Authority from terminating his Section 8 voucher and declaratory relief confirming that Defendants violated Section 1983 by failing to accord Plaintiff procedural due process rights and by terminating his Section 8 housing assistance eligibility under grounds not permitted by the applicable federal regulations. Even accepting the allegations set forth in

18

the Complaint as true, Plaintiff cannot maintain a Section 1983 action against Defendant Housing Authority. Therefore, for all of the reasons set forth above, I respectfully recommend to Judge Seybert that Plaintiff's request for an entry of default judgment against all three Defendants be DENIED.

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the chambers of the Honorable Joanna Seybert, and to the chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Seybert prior to the expiration of the (10) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir.), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED.**

Dated: Central Islip, New York
August 17, 2009

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge

19